NO. 80-286

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

———————————

IN RE THE MARRIAGE OF

ANDREW J. BECK,

                    Petitioner and Appellant,

    and

DORIS BECK,

                    Respondent and Respondent.

———————————

Appeal from:  District Court of the Third Judicial District,
              In and for the County of Powell.
              Honorable Robert Boyd, Judge presiding.

Counsel of Record:

    For Appellant:

        Leaphart Law Firm, Helena, Montana

    For Respondent:

        Daniels and Mizner, Deer Lodge, Montana

———————————

              Submitted on briefs: February 17, 1981

                      Decided: July 9, 1981

Filed: JUL 9 - 1981

_____
                      Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Andrew J. Beck appeals from that portion of a judgment of the Powell County District Court dividing the parties' property as a result of a marital dissolution. He contends that the trial court's findings and conclusions are not supported by the evidence, that the court failed to consider the tax consequences of its property division, and that the court should not have considered certain assets which the husband brought into the marriage to be marital property subject to division.

Although we rule that the trial court could properly consider the assets which the husband had brought into the marriage, we nonetheless must vacate the judgment and order a new hearing. The findings and conclusions are not supported by the evidence. Further, the court should have considered the tax consequences of the property division.

Andrew J. Beck (husband) and Doris Beck (wife) were married in 1966 in Elko, Nevada. It was the third marriage for each of them. Both had children from previous marriages, but no children were born to them during this marriage.

At the time of their marriage, the husband owned a substantial amount of ranch property in Powell County, identified as the Gold Creek property, the Red Hills property, and the Larabie Ranch.

During the marriage, the husband granted the wife, by joint tenancy deed, an undivided one-half interest in the Larabie ranch property. It is approximately 760 acres and was appraised at $393,462.80. Most of the land has been leased to others. In 1980, they received $14,000 in rental from the land, but in 1981, the rental income increased to approximately $16,000 per year.

-2-

During the marriage, the husband sold the Gold Hills property under two contracts for deed, one to Don Beck, and the other to Ronald Cunningham. Payment from both land contracts is assigned to the First Security Bank of Deer Lodge and the Federal Land Bank of Missoula. In this appeal, the husband contends that neither party receives income from the contracts. The wife, however, contends that the husband will receive a significant amount of cash from these two contracts under the property distribution ordered by the trial court. Her claim is unsubstantiated.

The Red Hills property contains about 2,100 acres and is subject to a life estate in Andrew A. Beck (the father of the petitioner-husband here). The fair market value of this property has been appraised at $247,386.

The husband and wife acquired other property during their marriage, in particular, two bars that they later resold for profit. These bars were purchased with the husband's funds but were improved by the wife's efforts before they were resold.

The only evidence regarding the value of the property was introduced by the husband. The trial court adopted the wife's proposed findings and conclusions almost in toto. We consider here only the major findings covering the division of the property.

The only evidence of the property value was introduced by the husband, as previously stated. He also introduced the only evidence of the debts of the parties. The undisputed evidence was that the Larabie ranch property had a value of $393,462.80, and that the Red Hills property had a fair market value of $247,386. The total estate was valued at $740,573.95. The trial court adopted the wife's proposed finding that the total value of the estate is $760,000.

-3-

The husband introduced evidence that the proceeds from the contract for sale of the Gold Hills property were unavailable to either the husband or wife because they were assigned to a bank. The husband's accountant testified that the contract payments from the Don Beck contract were "completely assigned to the First Security Bank in Deer Lodge and the Federal Land Bank in Missoula." Under cross-examination, the accountant testified that the First Security Bank mortgage on the property had been paid off, but that the bank was holding the contract proceeds under an assignment until the parties' other unspecified indebtednesses to the bank were paid off. The accountant also testified that the proceeds from the Cunningham contract were also assigned to these banks. This testimony was uncontradicted. In fact, the only evidence introduced by the wife concerning their income was that they received $14,000 per year from rentals on the Larabie place.

The undisputed evidence is that the parties have an indebtedness of approximately $92,000. The husband introduced into evidence a cash-flow chart showing that the annual income of the parties was $23,583, including the income from the Larabie property. This evidence was uncontradicted.

Adopting the wife's proposed findings, the trial court awarded the wife the Larabie ranch (valued at $393,000) together with the right to receive the rental income (now $16,000 per year).

The court awarded the rest of the property to the husband--the Red Hills property (valued at $247,386, but subject to a life estate), and the Gold Hills property--being sold to Don Beck and Ronald Cunningham under contracts for deed. The trial court also ordered the husband to pay all

-4-

debts of the parties, amounting to over $92,000. The trial court based this order in part on a finding that the husband would have an annual income of $23,583 per year. The court found his income to be sufficient to support the husband and also for him to pay all income taxes, mortgages, attorney fees, and miscellaneous indebtednesses of the parties, amounting to over $92,000. The uncontradicted evidence, however, is that the husband's annual income is only $9,000 per year, and from this he must not only support himself but pay approximately $92,000 in bills.

The error lies in the failure of the trial court to recognize an error, pointed out in the motion for a new trial, that the $23,583 annual income figure for the husband was based in part on $14,000 rental income of the Larabie ranch property. The court, however, not only awarded this ranch to the wife, but also awarded her the rental income, thereby cutting the income available to the husband to a little over $9,000 per year. The uncontradicted evidence is that the lease payments from the Larabie ranch amount to the greatest portion of the total income available for distribution to the parties. From this $9,000 annual income, the husband must meet his own living expenses plus pay off over $92,000 of the debts.

Following entry of judgment, the husband moved for a new trial on the grounds that the findings and conclusions were unsupported by the evidence, and also because in entering the decree, the court failed to consider the tax consequences of the property division. The motion was initially noticed up for hearing, but a later minute entry indicates that the hearing was vacated upon stipulation of the parties. Both sides presented affidavits in support of their position on the motion for a new trial. In her counter-affidavit resisting the husband's motion for a new trial,

-5-

the wife attested that the trial court's property division left the husband several sources of income which could furnish him with over $25,000 annually. The wife's allegations are, however, partially speculative in nature and wholly unsupported by the evidence. These alleged amounts of income are not set forth in the record. The wife has pointed to absolutely no evidence in the record either supporting the trial court's findings nor refuting the husband's contentions that the property division left him with only $9,000 in yearly income.

The motion for a new trial was not again noticed up for hearing, and the trial court took no action on the motion. As a result, under Rule 59(d), M.R.Civ.P., the motion was deemed denied ten days after the wife served her counter-affidavit. A timely notice of appeal was filed, and this appeal followed.

With no support in the record, the wife baldly asserts that the husband will have a gross annual income of $37,000, and that he will have a net annual income of $21,000. She bases this argument in part on an unfounded premise that proceeds from the Gold Hill contracts are subject to mortgage payments to the Federal Land Bank in the amount of only $16,000 annually. The record supports neither the gross annual income of $37,000 nor the $16,000 annual mortgage payments.

The only evidence supports a finding that the husband would have an annual net income of just over $9,000. Further the only evidence supports a finding that the value of the marital estate is $740,673.95 rather than the figure of $760,000 set by the trial court at the suggestion of the wife. The trial court could have arrived at these findings

or conclusions only if it disbelieved portions of the husband's evidence, but if the trial court did not believe this evidence, it was not free to arbitrarily set figures not supported by the evidentiary record. Findings and conclusions may not rely solely on a perceived lack of credibility; rather, they must be supported by evidence. See, In Re Marriage of Lippert (1981), ___ Mont. ___, 627 P.2d 1206, 38 St.Rep. 625.

The conflict between the evidence and the findings resulted from the trial court's wholesale adoption of the wife's proposed findings and conclusions. We recently disapproved of such a practice. See, Tomaskie v. Tomaskie (1981), ___ Mont. ___, 625 P.2d 536, 539, 38 St.Rep. 416, 419, citing Canon 19, Canons of Judicial Ethics, 144 Mont. at xxvi--xxvii. See also, Louis Dreyfus & CIE. v. Panama Canal Co. (5th Cir. 1962), 298 F.2d 733, 737; and Roberts v. Ross (3rd Cir. 1965), 344 F.2d 747, 751-752, which persuasively set forth reasons why the trial court should do its own work when drafting final findings and conclusions.

Because the findings are clearly erroneous (see Rule 52(a), M.R.Civ.P.), we must set them aside and vacate the judgment. There is another reason, however, to vacate the judgment. As the result of the property division ordered by the court, the husband moved for a new trial based in part on his claim that some harsh tax consequences would befall him and that the trial court had failed to consider these tax consequences. While we need not detail the tax consequences here, for we order a new hearing in any event, we take this occasion to hold that where a property distribution ordered by a court includes a taxable event precipitating a concrete and immediate tax liability, such tax liability should be considered by the court before entering its final judgment.

In Re Marriage of Gilbert (1981), ___ Mont. ___, ___ P.2d ___, 38 St.Rep. 743, we held that a District Court does not abuse its discretion by refusing to consider theoretical tax consequences when the court-ordered property distribution does not contemplate any taxable event which triggers present tax liability. But where a present tax liability will be triggered by the court-ordered distribution, the court must make allowance for such tax impact. Other courts have held that a property distribution must make allowance for the tax impact incurred by a husband on account of a court-ordered transfer of an interest in real property to the wife. See, e.g., Wahl v. Wahl (1968), 39 Wis.2d 510, 159 N.W.2d 651. See generally, Annot., Divorce or Separation: Consideration of Tax Liability or Consequences in Determining Alimony or Property Settlement Provisions, 51 A.L.R.3d 461. We hold, therefore, that at a new hearing, the trial court must consider any concrete and immediate adverse tax impact that a division of marital property might have on the parties.

A final issue raised by the husband is that only $15,000 acquired by the parties during their marriage through the sale of two bars is subject to equitable distribution between the parties. He argues that he owned the property before the marriage and it should still be his upon the dissolution of the marriage. Therefore, he asks this Court to rule that the joint tenancy transfer to the wife of an undivided one-half interest in the Larabie ranch must be set aside. The only purpose of that transfer, he argues, was to benefit the widow if the husband should die, and, because they are now divorced, that purpose has been mooted. He therefore asks that the one-half interest be set aside and the Larabie ranch be restored to him as the donor.

-8-

Section 40-4-202, MCA, specifically directs the court to equitably apportion between the parties property "belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both." This statute refutes the husband's argument, and we need not say more. An uncontested fact is that the trial court found both parties to be in ill health and not able to find gainful employment. Dividing only the $15,000 profit realized from the sale of the bars is not our idea of an equitable property division.

The judgment is vacated and this cause remanded for further proceedings consistent with this opinion.

_____
Justice

We Concur:

_____

_____

_____

_____
Justices