No. 95-312

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

FILED

IN RE THE ESTATE OF
JOSEPH S. FLYNN, Deceased.

NOV 30 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Thomas M. McKittrick, Judge presiding.


COUNSEL OF RECORD:

    For Appellant:

        John F. Lynch, Lynch & Chisholm, Great Falls,
        Montana

    For Respondent:

        Barbara Bell, Bell & Marra, Great Falls, Montana


                        Submitted on Briefs: November 2, 1995

                                  Decided: November 30, 1995

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Mary Flynn appeals an order of the Eighth Judicial District Court, Cascade County, admitting to formal probate the July I, 1994 will of Joseph Flynn and declaring null and void the June 14, I994 declaration of marriage between the two of them. We affirm in part and reverse in part.

The issues are:

1. Did the District Court err in invalidating the marriage of Joseph and Mary Flynn?

2. Is reversible error present in the court's findings of fact?

Joseph Flynn and Mary Flynn married in 1961. Mary brought four daughters into the marriage, and four more children were born to the couple. The marriage was dissolved in 1988. After their divorce, Joseph and Mary remained close.

In 1992, Joseph underwent surgery for colon cancer which had spread to his liver. By the spring of 1994, he was quite ill. On May 31, 1994, he drafted a will leaving his estate to Mary and appointing her as personal representative of the estate.

On June 14, 1994, while Joseph was temporarily in a nursing home, he and Mary signed a declaration of marriage. When Joseph left the nursing home, Mary returned to his home with him. She stayed only four days before she moved out again.

Joseph's sister, Dorothy Speer, then traveled from Glasgow, Montana, to care for him at his home. After a few more days, he agreed to return to the hospital and from there was transferred to

2

a retirement home. on July 1, 1994, Joseph executed a will in which he renounced his June 14, 1994 marriage to Mary and bequeathed his estate to Dorothy

Joseph Flynn died on July 17, 1994. Mary initiated informal probate proceedings under the May 31 will. Dorothy initiated informal probate proceedings under the July 1 will. The two matters were consolidated for hearing.

The court heard testimony from Mary and Dorothy, from three of Joseph's children and one of his stepdaughters, from the hospital chaplain and the nurse who witnessed the July 1 will, and from Joseph's primary physician. After the hearing, the court concluded that the July 1 will was the valid will of Joseph Flynn which revoked both the May 31 will and the declaration of marriage between Joseph Flynn and Mary Flynn. The court appointed Dorothy as personal representative and revoked its earlier order appointing Mary as personal representative. The court ordered that the July 1 will be admitted to formal probate and declared null and void the declaration of marriage. Mary appeals.

ISSUE 1

Did the District Court err in invalidating the marriage of Joseph and Mary Flynn?

Section 40-1-402, MCA, sets forth the grounds upon which a district court may declare a marriage invalid. At subsection (2), the statute provides:

> A declaration of invalidity under subsections (1)(a) through (1)(c) may be sought by any of the following persons and must be commenced within the times specified, but in no event may a declaration of invalidity be sought

3

<u>after the death of either party to the marriage</u>[.]
[Emphasis added. ]

Dorothy argues that Joseph "sought" to declare the marriage invalid when he signed his July 1 will, while he and Mary were both still living.

The Commissioners' Note in the annotations to § 40-I-402, MCA, comments :

> Subsection (b) [(2)] states a general policy against declarations of invalidity after the death of either party to the marriage .
>
> . .
>
> . . . [T]he use of the word "sought" rather than "commenced" implies that the death of a party to the marriage at any time before the entry of final judgment would terminate a proceeding attacking the marriage.

We agree. In this case, no legal action was commenced to declare the marriage invalid until after Joseph's death. We conclude, therefore, that the declaration of invalidity was "sought" only after Joseph died, in violation of the above statute. We therefore vacate that part of the judgment declaring invalid Joseph and Mary Flynn's June 14, 1994 marriage.

ISSUE 2

Is reversible error present in the court's findings of fact?

Findings are a recordation of the essential and determining facts upon which the district court rested its conclusions of law. In re Marriage of Barron (1978), 177 Mont. 161, 164, 580 P.2d 936, 938. This Court's standard of review of findings of fact is whether the findings are clearly erroneous. Rule 52(a), M.R.Civ.P. A finding is clearly erroneous if it is not supported by substan-

4

tial evidence, if the court misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. *Interstate Production Credit v. DeSaye* (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287.

The first finding challenged on appeal is Finding No. 5, which reads in pertinent part:

> Dana Darko, decedent's step-daughter testified that she witnessed decedent's signature of [the May 31] will and she believed the decedent to be competent at that **time.**

Dana Darko was the husband of one of Flynn's stepdaughters. He was a witness to the May 31 will, but did not testify at the hearing. However, Melodie Carleton, Flynn's daughter, did testify to the substance contained in Finding No. 5.

We will not reject as clearly erroneous a finding in which the error is correctable. *In re Marriage of Turbes* (1988), 234 Mont. 152, 159, 762 P.2d 237, 241. As discussed above, the court's error in Finding No. 5 was in setting forth the name of the witness, not in the substance of the finding. Substantial evidence supports the substance of the finding. The error could have been corrected through a motion to amend the judgment, but no such motion was made. Further, we conclude that the court did not misapprehend the effect of the evidence and a review of the record does not leave us with the definite and firm conviction that a substantive mistake has been made. We conclude that the error in Finding No. 5 is not reversible error.

5

Mary next disputes Finding No. 7, in which the court found "Mendolynn Walls testified that in her opinion, the decedent was competent on June 14." As Mary points out, Mendolynn Walls did not testify. However, her sister Starnell Darko testified that she was present at the June 14 marriage and that in her opinion Joseph was "aware of the situation that was going on" and willing to be remarried. Again, the error in setting forth the name of the witness is correctable and does not affect the judgment. We conclude it is not reversible error.

Mary challenges as without support in the record the court's statement in Finding No. 8 that "[t]he rest of the family was surprised by the Declaration of Marriage and did not know of it in advance." The record includes the testimony of at least two family members that they were surprised at the remarriage--Farren Flynn and Melonnie Suek. Finding No. 8 is not clearly erroneous.

Mary next challenges part of Finding No. 10: "When [Dorothy] arrived, decedent's home was filthy, smelled strongly of urine and decedent had not bathed in days." Mary contends that Dorothy did not so testify.

Dorothy testified that when she arrived at Joseph's home on June 26, his bedroom was "the awfulest thing I've ever seen." She testified that there was a garbage can and urinal near Joseph's bed. She believed he was using the urinal and then dumping the contents into the garbage can. She testified that Joseph was incontinent, that he was filthy, and that his hair was matted and dirty. She testified that it took her three to four hours to give

Joseph a shower because he was so weak. Finding No. 10 captures the essence of her testimony.

The court's Finding No. 13 was:

> JoAnn Thornberg testified that she has been an oncology nurse at Columbus Hospital for about 10 years. She had met Mr. Flynn on previous hospitalizations. She felt that at the time she witnessed the will of July 1 that decedent knew what he was doing and was competent. She testified that she was with Mr. Flynn as much as possible as his family did not visit very often. She testified that often terminal cancer patients can be competent at times throughout the day and incompetent at other times.

Mary points out that although JoAnn Thornberg testified that Joseph knew what he was doing and was competent when he signed the July 1 will, she also testified that the opinion of Joseph's treating physician, Dr. Warr, should be given more weight than her own opinion. Dr. Warr testified, "I felt that they had made a big mistake in saying that he was competent at that point."

As the trier of fact, the District Court, not JoAnn Thornberg, bore responsibility for deciding the amount of weight to be given to the testimony of each witness. Keebler v. Harding (1991), 247 Mont. 518, 523, 807 P.2d 1354, 1357. In addition to JoAnn Thornberg, Father Birkmaier also testified that he witnessed the signing of the July 1 will and believed Joseph was competent at that time. We conclude Mary has demonstrated no error in Finding No. 13.

Finally, Mary contests the court's Finding No. 14:

> Father Birkmaier testified that he works at the Columbus Hospital and that he had talked to decedent before and after he witnessed the will. He believed that Mr. Flynn was competent at the time he witnessed the signing of the will on July 1. The decedent stated at the time that leaving his property to his sister was the moral thing to

7

do because Dorothy Speer had cared for their sister, who had been severely injured in a car accident, for many years without compensation.

Mary points out that all of the facts in Finding No. 14 were not contained within Father Birkmaier's testimony. Specifically, Father Birkmaier testified that Joseph told him that leaving his estate to Dorothy would be "the moral and right thing to do" because Dorothy had "tak[en] care of somebody else." Dorothy testified that the person she had cared for was a sister of hers and Joseph's who had been seriously injured in a car accident in 1936. In crafting Finding No. 14, the court tied together Father Birkmaier's testimony and testimony by Dorothy. In view of the purpose of findings to record the essential and determining facts upon which the court bases its decision, we conclude that the court did not err in so doing.

In summary, although we have held that the District Court erred in invalidating Mary and Joseph's declaration of marriage, Mary has shown no reversible error in any of the challenged findings. We reverse the portion of the District Court's order declaring null and void the June 14, 1994 declaration of marriage between Joseph Flynn and Mary Flynn. We affirm the portion of the court's order admitting the July 1, 1994 will of Joseph Flynn to formal probate and appointing Dorothy Speer as personal representative of the estate. This cause is remanded for further proceedings consistent with this Opinion.

_____
Chief Justice

We concur:

_____

_____

_____
Justices

November 30, 1995

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


John F. Lynch
Lynch **&** Chisholm
P.O. Box 2265
Great Falls, MT 59403

Barbara Bell
Bell **&** Marra
303 Liberty Center
9 Third Street No.
Great Falls, MT 59401


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: *D. Gallagher*
Deputy