FILED

September 8 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0614

DA 14-0614

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2015 MT 263

IN RE THE MARRIAGE OF:

NANCY R. CLARK,

      Petitioner and Appellee,

  and

GORDON A. CLARK,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                In and For the County of Yellowstone, Cause No. DR 12-531
                Honorable Mary Jane Knisely, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Stephen C. Mackey, Towe, Ball, Mackey, Sommerfeld & Turner,
            P.L.L.P., Billings, Montana

      For Appellee:

            Jill Deann LaRance, LaRance & Syth, P.C., Billings, Montana

                          Submitted on Briefs:  August 5, 2015
                                  Decided:  September 8, 2015

Filed:

                                Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 The Thirteenth Judicial District Court, Yellowstone County, entered a final dissolution decree in the marriage of Gordon A. Clark and Nancy R. Clark.[1] Gordon appeals, raising the following issues:

> *1. Whether the District Court abused its discretion in ordering Gordon to make an equalization payment within 120 days or be forced to sell or transfer the ranch.*
>
> *2. Whether the District Court abused its discretion in failing to consider tax liabilities associated with selling the ranch.*
>
> *3. Whether the District Court erred in its valuation of the ranch.*

¶2 We affirm on the first and third issues, but reverse and remand on the second issue.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 Gordon and Nancy married in 1996 and separated in 2012 with no children born to the marriage. Nancy entered the marriage with property on the Stillwater River near Absarokee, Montana ("the river house") and Gordon entered the marriage with property near Acton, Montana ("the ranch"). The parties put both properties under joint title upon their marriage. Both parties are currently in their sixties and Nancy has a number of health issues.

¶4 After the parties separated, Nancy filed a motion for temporary maintenance. The District Court ordered Gordon to pay $2,800 in temporary maintenance per month beginning in November 2012 and continuing until final resolution unless the river house

---

[1] As part of the dissolution, Nancy was restored to her former name, Nancy R. Thorn.

sold first. Gordon made payments from November 2012 through February 2013 but then stopped. Gordon also stopped making mortgage payments on the ranch in early 2012, sending that property into foreclosure. The parties sold 160 acres of the ranch to a neighbor for $800 per acre and used the proceeds to bring the mortgage current in early 2013. Gordon again stopped making mortgage payments on the ranch, however, sending it into foreclosure for a second time in July 2013.

¶5 The river house was sold in early 2013. After Gordon stopped paying temporary maintenance, the District Court allowed Nancy to draw her temporary maintenance from the river house proceeds. At the time of the final decree, the District Court estimated that $289,681.23 remained in proceeds from the river house's sale.

¶6 The ranch's value was a major issue at trial. The parties each employed experts to testify about the property's value. Gordon's expert valued the ranch at $1,172,513. Nancy's expert valued the property at $2,667,940. Gordon also indicated at trial that he would not sell the ranch for $1,172,513, but would consider selling it for $2.4 million. Neither party presented evidence on the tax implications of selling the ranch.

¶7 The District Court valued the ranch at $2.45 million and valued the totality of the marital estate at approximately $2.6 million. In its distribution of the marital estate, the court awarded the ranch and its associated debt to Gordon. The District Court found that the ranch "does not provide a substantial amount of income to [Gordon]." The Court awarded $955,297.96 or approximately 37% of the estate to Nancy, including requiring Gordon to make an equalization payment of $650,000 to Nancy within 120 days from the

3

date of the order.  The court specified that if Gordon did not make such a payment in the allotted time, the ranch was to be sold "as quickly as possible" and the equalization payment drawn from proceeds of the sale.  The court also specified that if Gordon did not cooperate with the sale of the ranch, the property would transfer solely into Nancy's name so that she could handle its sale.

¶8     After the dissolution decree was entered, Gordon filed a motion under M. R. Civ. P. 52 for the District Court to amend its findings of fact and conclusions of law, and under M. R. Civ. P. 59 for amendment of judgment and a new trial.[2]  The District Court denied the motion without explanation.  Gordon appeals.[3]

### STANDARDS OF REVIEW

¶9     We generally review a district court's valuation and distribution of a marital estate for an abuse of discretion.  *In re Marriage of Thorner*, 2008 MT 270, ¶ 21, 345 Mont. 194, 190 P.3d 1063.  Although the parties dispute the standard of review to apply to Gordon's appeal considering he provided notice of appeal only from the District Court's denial of post-trial motions, we consistently have applied an abuse of discretion standard to post-trial motions on discretionary dissolution matters.  *In re Marriage of Anderson*, 2013 MT 238, ¶ 13, 371 Mont. 321, 307 P.3d 313; *In re Marriage of Johnson*, 2011 MT 255, ¶ 12, 362 Mont. 236, 262 P.3d 1105; *In re Marriage of Schoenthal*, 2005 MT 24,

---

[2] Before the District Court, the parties disputed whether Gordon's motion for a new trial was timely brought under M. R. Civ. P. 59(b)'s twenty-eight day time limit and whether M. R. Civ. P. 58(1)'s separate document requirement applies.  On appeal, however, Nancy has apparently abandoned her argument that Gordon's post-trial motion was untimely.

[3] Gordon filed for bankruptcy while this appeal was pending, but later agreed to voluntary dismissal and the bankruptcy case was closed.

¶ 9, 326 Mont. 15, 106 P.3d 1162. Further, we review findings of fact to determine whether they are clearly erroneous. M. R. Civ. P. 52(a)(6); *In re Marriage of Patton*, 2015 MT 7, ¶ 18, 378 Mont. 22, 340 P.3d 1242.

## DISCUSSION

¶10     *1. Whether the District Court abused its discretion in ordering Gordon to make an equalization payment within 120 days or be forced to sell or transfer the ranch.*

¶11     The District Court ordered Gordon to make an equalization payment of $650,000 to Nancy within 120 days of its June 17, 2014 dissolution order or else have the marital ranch placed on the market and sold "as quickly as possible" with the net proceeds of the sale applied toward the equalization payment. Gordon argues that this was an abuse of discretion.

¶12     Section 40-4-202(1), MCA, requires a district court to "equitably apportion" a marital estate upon dissolution. A district court has broad discretion in apportioning the estate, *Patton*, ¶ 46, but the discretion has limits. For instance, a district court abuses its discretion when it apportions more property to a party than is found in the marital estate. *In re Marriage of Dennison*, 2006 MT 56, ¶ 22, 331 Mont. 315, 132 P.3d 535. Relatedly, we have expressed concern about a monetary distribution award that is larger than the liquid assets of the party ordered to pay and that requires immediate payment. Such an award may be an abuse of discretion depending on the particular circumstances of a case. *Compare In re Marriage of Schwartz*, 2013 MT 145, ¶¶ 34-36, 370 Mont. 294, 308 P.3d 949 (remanding for the district court to enter a deferred payment plan where an up-front equalization payment would require the husband to sell his business and would

5

undermine his future ability to earn an income), *with In re Marriage of Westland*, 257 Mont. 169, 172, 848 P.2d 492, 494 (1993) (upholding a district court's order requiring an up-front payment from the husband where future payments were not assured or secured and the husband potentially could transfer assets or enter bankruptcy to the wife's detriment).  As we explained in *Schwartz*:

> It is not error per se to make an award greater than the payor's liquid assets, if the payor can sell or refinance property to meet the obligation. Such an award is not ideal, however, for there are various disadvantages to compelling sale in the divorce case. Most importantly, sale requires payment of capital gains costs, commissions, and other expenses, and property often fails to earn full value when sold under the pressure of divorce. Because of these disadvantages, an immediate monetary award which exceeds the value of the payor's liquid assets is a remedy of last rather than first resort. A better option would be division in kind (if division can be accomplished without violating the rule against co-ownership), or a monetary award deferred over sufficient time for liquid funds to be accumulated without sale. If the payor cannot reasonably sell assets or borrow liquid funds to pay an immediate monetary award, the making of such an award is error.

*Schwartz*, ¶ 34 (quoting Brett R. Turner, 3 *Equitable Distribution of Property* § 9.9, 31-33 (3d ed. 2005)).

¶13    Gordon employs the above quote to argue that the District Court's order requiring an immediate equalization payment or sale of the ranch was error.  What *Schwartz* makes clear, however, is that whether the structure of an equalization payment is error depends on the particular circumstances of a case.  *Schwartz*, ¶ 34 ("In the right circumstances, a deferred monetary award may be preferable to an ordered sale of asset . . . .").  To that end, Nancy argues that the District Court's order specifying a 120-day timeline for the equalization payment and consequences of failing to comply was justified in this case

because of Gordon's lack of cooperation throughout the dissolution proceedings. We agree that the District Court's equalization order was not an abuse of discretion.

¶14 As mentioned, Gordon ceased temporary maintenance payments while this case was pending and twice allowed the ranch to slip into foreclosure. Additionally, Nancy is without work and suffering medical issues, and Gordon already has attempted to discharge debts through bankruptcy once in recent years. Further, the evidence showed that a partial sale of the ranch property had occurred previously to satisfy debt. Given these facts, the District Court acted within its sound discretion to order an up-front equalization payment and to incentivize Gordon's cooperation by specifying consequences for failing to make the payment within the specified time, including the forced sale of the ranch or its transfer to Nancy for sale. *See Westland*, 257 Mont. at 172, 848 P.2d at 494.

¶15 *2. Whether the District Court abused its discretion in failing to consider tax liabilities associated with selling the ranch.*

¶16 Under § 40-4-202(1), MCA, a district court equitably apportioning an estate must take into account "liabilities," among other factors. In *In re Marriage of Beck*, 193 Mont. 166, 631 P.2d 282 (1981), we held that where a property distribution ordered by a court includes a taxable event precipitating a concrete and immediate tax liability, such tax liability should be considered by the court before entering its final judgment. *Beck*, 193 Mont. at 172, 631 P.2d at 285. The failure to consider the tax consequences of such a "concrete and immediate" event is an abuse of discretion. *In re Marriage of Thorner*, 2008 MT 270, ¶¶ 42-47, 345 Mont. 194, 190 P.3d 1063.

7

¶17    Gordon argues that the District Court abused its discretion by failing to consider the tax consequences of selling the ranch. The District Court's dissolution decree does not reference any liabilities associated with selling the ranch. Nancy argues, however, that no such consideration was necessary in this case because the consequences were speculative rather than concrete and immediate.

¶18    Determining whether a tax event is the concrete and immediate result of a distribution order requires examining the context around the distribution order. To find that a taxable event is concrete and immediate, we have not demanded that the distribution order specifically direct the very event that triggers taxation. *See Thorner*, ¶ 45 ("We note that the decree does not require that $31,595 be withdrawn from Julie's retirement account. Still there is no doubt that the District Court's decree required a distribution to Ron of this amount as a part of the parties' retirement assets."); *In re Marriage of Lee*, 249 Mont. 516, 517-19, 816 P.2d 1076, 1076-78 (tracing the necessity of liquidating assets constituting a taxable event to the District Court's distribution order). But, viewing the surrounding circumstances, we have demanded that the distribution order at least reasonably appear to trigger a taxable event. *See In re Marriage of Haberkern*, 2004 MT 29, ¶¶ 16-19, 319 Mont. 393, 85 P.3d 743 (concluding that a husband's testimony that assets he was distributed may eventually be taxed did not establish a concrete and immediate tax liability); *In re Marriage of DeBuff*, 2002 MT 159, ¶¶ 48-49, 310 Mont. 382, 50 P.3d 1070 (concluding that a concrete and immediate tax liability was not triggered by order where husband agreed he had "a variety of other

8

[non-taxed] options available" to provide funds necessary to satisfy equalization payment obligation); *In re Marriage of Turbes*, 234 Mont. 152, 159-60, 762 P.2d 237, 241-42 (1988) (concluding that the event triggering any tax liability, which itself was theoretical, was an accord and satisfaction that occurred before the District Court's order).

¶19    In this case, both the surrounding circumstances and the order itself implicate a significant taxable event.  The District Court ordered Gordon to make a $650,000 equalization payment to Nancy.  The only asset worth that amount in Gordon's possession is the ranch.  The District Court ordered that, if the equalization payment was not made within 120 days, the ranch be sold "as quickly as possible" to satisfy Gordon's equalization obligation.  Although Nancy argues that Gordon could find funds to pay his obligation by refinancing or mortgaging instead of selling the ranch, she does not suggest how Gordon would be able to obtain quickly such a substantial loan in light of his undisputed lack of substantial income and the recent foreclosure actions.  Nancy also argues that a portion of the ranch—instead of the entire ranch—could be sold to finance the equalization payment, but a taxable event presumably will occur with any sale of the property sufficient to raise $650,000.  The District Court's order makes a substantial sale of ranch property concrete and immediate.

¶20    Nancy further argues that, even if a tax event is a concrete and immediate result of the District Court's order, Gordon failed to present evidence of the tax that would befall him upon selling the ranch and thus waived the argument.  Nancy cites *In re Marriage of Taylor*, 257 Mont. 122, 848 P.2d 478 (1993), and *Turbes* as support.  In *Taylor*, we

9

rejected a husband's argument that a district court erred by not taking into account all of his company's liabilities because (1) "no evidence was introduced at trial relating to a concrete and immediate tax liability," (2) the husband introduced no evidence that he would "have to sell his stock in order to pay any cash award," and (3) the court did not order him to sell his stock. *Taylor*, 257 Mont. at 127, 848 P.2d at 481. In *Turbes*, we stated that a wife "failed to produce adequate evidence at the hearing upon which the court could make a determination of the existence of tax consequences," where the wife offered only an "unsubstantiated belief"—conflicting with other evidence—that she "theoretical[ly]" would incur a tax liability. *Turbes*, 234 Mont. at 159-60, 762 P.2d at 241-42.

¶21    In contrast to *Turbes* and *Taylor*, there is a concrete and immediate tax event contemplated on the face of the District Court's order in this case. The District Court's short timeline for the equalization payment effectively renders selling the ranch the only reasonable option to make the payment. Further, the District Court specifically ordered that the ranch be sold if the payment is not made within the timeline. Finally, the record suggests that the first mention of a possible sale of the ranch appeared the day before trial in Nancy's proposed findings and conclusions. The 120-day deadline was imposed sua sponte by the court in its final decree. After the District Court ordered the ranch sold if Gordon did not make the equalization payment within that time period, Gordon filed a post-trial motion bringing his liabilities argument to the District Court's attention. In the unusual and particular circumstances of this case, we hold that Gordon did not waive his

10

right to raise his tax argument on appeal. Once raised in Gordon's post-trial motion, the District Court abused its discretion by failing to consider the tax liabilities associated with selling the ranch.

¶22   *3. Whether the District Court erred in its valuation of the ranch.*

¶23   Gordon argues that the District Court's valuation of the ranch at $2.45 million is not supported by the record. A District Court may adopt any valuation of marital property that is reasonable in light of the evidence. *In re Marriage of Meeks*, 276 Mont. 237, 242-43, 915 P.3d 831, 834-35 (1996).

¶24   The District Court chose a valuation that was between Gordon's proposed $1,172,513 valuation and Nancy's proposed $2,667,940 valuation. The court justified its choice by "considering comparable properties as well as the whole Ranch property and all of the improvements made thereon," and Gordon's testimony that he would consider selling the property for $2.4 million. The court reduced Nancy's proposed valuation by approximately $217,000 because of "the insufficient support in the record and the speculation that dividing the ranch parcels would increase the value." Gordon takes issue with this explanation, arguing that the amount of the reduction does not match the court's rejection of the view of Nancy's expert on the potential for subdividing the ranch. However, based on the record on appeal—including the bases for the proposed valuations, the price at which the parties sold a portion of the ranch during dissolution proceedings, and Gordon's admission about the price at which he would consider selling the property—the District Court's valuation is supported by substantial evidence.

11

Because there is conflicting evidence, it was within the District Court's province to weigh the evidence, determine the credibility of witnesses, and value the ranch accordingly. *See Koppen v. Bolich*, 2003 MT 313, ¶ 42, 318 Mont. 240, 79 P.3d 1100.

**CONCLUSION**

¶25 We affirm the District Court's valuation of the ranch and the structure of its equalization payment order. We reverse the final property distribution because it fails to consider tax liabilities associated with selling the ranch and those liabilities potentially affect an equitable apportionment of the estate. We remand for further consideration of such tax liabilities and entry of an amended property distribution order.


/S/ BETH BAKER

We concur:


/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ JIM RICE