FILED

09/12/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0600

DA 16-0600

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 223

IN RE THE MARRIAGE OF:

SANDRA J. BROESDER,

Petitioner and Appellee,

and

DONALD W. BROESDER,

Respondent and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. ADR 12-138
Honorable Gregory G. Pinski, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Jason T. Holden, Katie R. Ranta, Faure Holden Attorneys at Law, P.C.,
Great Falls, Montana

Jeffrey S. Ferguson, Attorney at Law, Great Falls, Montana

For Appellee:

Antonia P. Marra, Marra, Evenson & Bell, P.C., Great Falls, Montana

Submitted on Briefs:  August 16, 2017

Decided:  September 12, 2017

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Donald W. Broesder appeals the Order issued by the Eighth Judicial District Court, Cascade County, affirming and adopting the Standing Master's April 13, 2016 Findings of Fact, Conclusions of Law, and Decree of Dissolution, which dissolved the marriage between Donald and Sandra Broesder. We reverse and remand, addressing the following restated issue:

> *Did the District Court err by failing to consider the tax consequences of the distribution of the marital estate, resulting in an inequitable distribution?*

### FACTUAL AND PROCEDURAL BACKGROUND

¶2 Since 1951, Donald has lived and worked on the Broesder family ranch, which was homesteaded by Donald's grandfather in 1911, and then owned by his parents. Donald and Sandra were married in 1976, and for approximately 35 years they lived and worked on the ranch. Together with their sons, Seth Broesder and Shane Broesder, and daughter-in-law, Sarah Broesder, Donald and Sandra own the ranch in a small corporation with restrictions upon the sale of stock.

¶3 During the marriage, Donald worked exclusively on the ranch, while Sandra worked both on the ranch and elsewhere, including serving as a Pondera County Commissioner. Sandra's non-ranch income was used for personal expenses, as well as for ranch and family expenses. Seth, Sarah, and Shane have also worked on the ranch. Ranch shares were given to Donald and Sandra to compensate them for their work on the ranch, and for property and assets, which they transferred to the ranch corporation when it was originally incorporated. Shares of the ranch corporation are held as follows:

2

| Owner | Shares Owned | Ownership Percentage |
|-------|--------------|----------------------|
| Donald | 9909 | 39.65% |
| Sandra | 9908 | 39.64% |
| Seth | 4087 | 16.35% |
| Sarah | 600 | 2.40% |
| Shane | 496 | 1.96% |
| **Total** | 25,000 | 100% |

¶4 The parties agree the ranch is the significant marital asset, and the land is the significant ranch asset. The total value of the ranch is approximately $3.1 million, with the land valued at approximately $2.3 million. Donald and Sandra both have minimal personal assets. As counsel for Sandra stated, at the hearing before the District Court, the land is "really the majority asset of the corporation. And, in fact, that was the reason the other shareholders sought to intervene."

¶5 Seth and Sarah moved to intervene in the matter, arguing that intervention was necessary to protect their interests in the ranch. The Standing Master denied the motion for intervention, reasoning "[t]he notion that an equitable division in this matter cannot be achieved without compelling the sale of assets is speculative."

¶6 During the proceedings, Donald suggested Sandra keep her ranch shares as her portion of the marital estate, but Sandra offered it would be necessary, in that event, for her to be given "some sort of control" over ranch decisions, as well as receiving reimbursement for living costs the ranch had provided during the marriage. Regarding possible sale between them, Donald suggested using the book value of $10.25 per share set, in 2003, by the shareholders pursuant to their stock agreement as the value of Sandra's interest. However, the resulting value of $101,557 was unrepresentative of the fair market value of

3

Sandra's shares, and the Standing Master concluded such a price would constitute a windfall for Donald, who was unwilling to sell his shares for that price. Sandra thought the ranch assets should be valued at $4 million, but regarding a buyout of the shares, Sandra testified:

> Q. If the Court values the marital portion of the corporation, and values the corporation at $4 million, could either you or Don realistically get a loan to purchase the other's interest at this point?
>
> A. Probably not. I don't see how the ranch cash flow could service that amount of debt.

¶7 The Standing Master determined Donald's interest in the ranch to be $1,159,541 and Sandra's interest to be $1,159,424. Following this determination, the Standing Master ordered Donald to pay Sandra the sum of $1,159,483[1] for her interest in the ranch, with $50,000 to be paid within 60 days and the remainder within 24 months. The Standing Master ordered Sandra would not unreasonably withhold her consent to actions taken by Donald in furtherance of the judgment, including "liquidation of the corporate property." However, no consideration was given to the tax implications of liquidating ranch property and assets to satisfy the judgment.

¶8 Donald filed objections to the Standing Master's Order, and the District Court conducted a hearing. Donald urged consideration of the tax implications of a sale, which the District Court acknowledged:

---

[1] There is a $59 discrepancy between Sandra's interest in the Ranch and the amount Donald was ordered to pay her for her interest. There is no explanation in the record for this discrepancy.

Mr. Ferguson: [T]here's absolutely no tax consequences figured into this, either. You and I both know that if this ranch is liquidated, the tax consequences are going to be enormous.

The Court: True, because of the low basis and the high sale value.

Mr. Ferguson: Absolutely.

The Court: There's no doubt about that.

¶9 The District Court affirmed and adopted the Standing Master's Order, reasoning the Standing Master had "considered the totality of circumstances, limited marital assets, and equitably structured a way for Donald to satisfy the marital property division." The court did not address the tax consequences in its written order. Donald appeals.

**STANDARD OF REVIEW**

¶10 Two standards of review are relevant in cases involving both a standing master and the district court: the standard the district court applies to the master's report and the standard we apply to the district court's decision. *In re Marriage of Davis*, 2016 MT 52, ¶ 4, 382 Mont. 378, 367 P.3d 400 (citing *In re Marriage of Kostelnik*, 2015 MT 283, ¶ 15, 381 Mont. 182, 357 P.3d 912). We review a district court's decisions *de novo* to determine whether it applied the correct standard of review to a standing master's findings of fact and conclusions of law. *Kostelnik*, ¶ 15 (citing *In re Marriage of Patton*, 2015 MT 7, ¶ 17, 378 Mont. 22, 340 P.3d 1242). A district court reviews a standing master's findings of fact for clear error, *Patton*, ¶ 24, and its conclusions of law to determine if they are correct, *Patton*, ¶ 43.

5

**DISCUSSION**

¶11     *Did the District Court err by failing to consider the tax consequences of the distribution of the marital estate, resulting in an inequitable distribution?*

¶12     Donald argues the Standing Master and District Court failed to consider the tax consequences of the practical conclusion of the District Court's order, a "forced liquidation of Broesder Ranch, Inc.," resulting in an "inequitable and unconscionable" distribution of the martial estate.  Sandra argues Donald failed to present evidence of tax consequences, merely raising the issue in legal arguments to the District Court, and that the distribution of the marital estate was nonetheless fair and equitable.

¶13     "In a proceeding for dissolution of a marriage, . . . the court . . . shall, . . . finally equitably apportion between the parties the property and assets belonging to either or both. . . ."  Section 40-4-202(1), MCA.  This statute and public policy demand an equitable distribution of the marital estate, including tax liability.  We have previously held "where a property distribution ordered by a court includes a taxable event precipitating a concrete and immediate tax liability, such tax liability should be considered by the court before entering its final judgment."  *In re Marriage of Clark*, 2015 MT 263, ¶ 16, 381 Mont. 50, 357 P.3d 314 (citing *In re Marriage of Beck*, 193 Mont. 166, 172, 631 P.2d 282, 285 (1981)).  We have also held determining the existence of a "concrete and immediate" tax event caused by a distribution order "requires examining the context around the distribution order."  *Clark*, ¶ 18.  "To find that a taxable event is concrete and immediate, we have not demanded that the distribution order specifically direct the very event that triggers taxation."  *Clark*, ¶ 18.  However, "we have demanded that the distribution order at least

6

reasonably appear to trigger a taxable event" in the context of the surrounding circumstances. *Clark*, ¶ 18.

¶14    The decree here does not expressly mandate liquidation of the ranch. However, it orders Donald to pay $1.1 million to Sandra for her share of the martial estate, and the record fails to establish that there are available assets in the marital estate for such a payment or that financing a purchase of Sandra's shares at fair market value is feasible. Thus, the "liquidation of corporate property" referenced by the Standing Master would appear to be a necessity to satisfy the judgment—the ranch would have to be sold, which would "reasonably appear to trigger a taxable event." *Clark*, ¶ 18. Notwithstanding this eventuality, the tax consequences were not "considered by the court before entering its final judgment." *Clark*, ¶ 16.

¶15    Theorizing on the application of federal and state corporate and capital gains taxes, Donald argues on appeal that sale of the ranch property would trigger over $1 million in taxes, which, after distribution to the other shareholders, would leave Donald with almost enough funds to satisfy the decreed payment to Sandra, and nothing for himself. Such a scenario would obviously be inequitable. Whether Donald's scenario is accurate is unknown, as there is no record evidence of the tax consequences of liquidation, but nonetheless serves to illustrate the need to follow *Clark* in this instance and assess the tax implications, even if Donald only generally raised the issue before the District Court. While we have adopted no firm rule, we have cautioned about ordering the sale of a spouse's business assets "in order to satisfy the judgment, thereby losing the bulk of the

7

marital estate distributed to him and undermining his future ability to earn an income."
*Schwartz v. Harris*, 2013 MT 145, ¶ 35, 370 Mont. 294, 308 P.3d 949.

¶16    The Standing Master erred as a matter of law by failing to consider the tax consequences of the likely result that the ranch would be sold to satisfy the judgment, and the District Court erred in adopting this conclusion.  We reverse and remand this matter for a new trial or, in the discretion of the District Court, such further proceedings as would be necessary to implement this opinion.


/S/ JIM RICE


We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA