No. 92-464

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

IN RE THE MARRIAGE OF

LAVONNE L. WESTLAND,

> Petitioner and Respondent,

and

ROBERT R. WESTLAND,

> Respondent and Appellant.

APPEAL FROM: District Court of the Seventeenth Judicial
District, In and for the County of Valley,
The Honorable M. James Sorte, Judge presiding.

COUNSEL OF RECORD:

> For Appellant:
>
> > Matthew W. Knierim, Attorney at Law, Glasgow,
> > Montana
>
> For Respondent:
>
> > Keith Maristuen, Bosch, Kuhr, Dugdale, Martin &
> > Kaze, Havre, Montana

FILED

MAR 2 1993

Filed:

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs: January 28, 1993

Decided: March 2, 1993

_____
Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

The District Court for the Seventeenth Judicial District, Valley County, entered judgment dissolving the marriage of LaVonne Westland and Robert Westland and apportioning their large ranch between them. Robert Westland appeals. We affirm, and remand in part for clarification.

The issues are:

1. Do the District Court's findings, conclusions, and decree legitimately and adequately provide for division of the marital property?

2. Do the court's findings, conclusions, and decree adequately divide or assess responsibility for the parties' indebtedness?

3. Do the court's findings, conclusions, and decree adequately address and assess responsibility for the tax consequences of its division of the ranch operation?

LaVonne and Robert Westland entered into a common law marriage in 1958. At that time, Robert owned 3,562 acres of real property in eastern Montana, some equipment and machinery, about 100 head of cattle, some horses, grain, and feed. LaVonne owned a limited amount of personal property. By the time their marriage was dissolved in 1992, the parties had acquired an extensive farming and ranching operation of over 34,000 acres. Their marital estate was valued at over six million dollars, with some two and one-half

2

million dollars of indebtedness. The living children of their marriage have all attained the age of majority.

At trial, Robert proposed that he be awarded the entire ranch and that he pay LaVonne $50,000 a year as a property settlement and maintenance. Instead, following LaVonne's proposal, the District Court divided the marital property, apportioning the "North place" to LaVonne and the "South place" to Robert. LaVonne testified that this division of the ranch property, with 59 percent going to Robert and 41 percent to her, was consistent with the way the parties had divided responsibility for operation of the ranch for years. Robert appeals the order and judgment of the District Court.

I

Do the District Court's findings, conclusions, and decree adequately and legitimately provide for division of the marital property?

Robert allows that LaVonne worked hard as a farm wife and mother. He contends, however, that the court did not give him enough credit for the property he brought into the marriage. He claims that his premarital property must now be worth in excess of two million dollars due to inflation alone.

Upon dissolution of a marriage, premarital property, or the value thereof, is not necessarily returned to the party who brought it into the marriage. Section 40-4-202, MCA; In re Marriage of

3

Peetz (1992), 252 Mont. 448, 454, 830 P.2d 543, 547.   The court's responsibility is to equitably apportion marital property, taking into account, among other factors,

> the duration of the marriage . . . ; the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties; . . . whether the apportionment is in lieu of or in addition to maintenance; and the opportunity of each for future acquisition of capital assets and income.   The court shall also consider the contribution or dissipation of value of the respective estates and the contribution of a spouse as a homemaker or to the family unit.

Section 40-4-202(1), MCA.

In this case, LaVonne's contributions to the ranch during the parties' thirty-four-year marriage and her dependence upon the marital estate for her future support were not contested.   Her undisputed testimony was that she had done the "woman's work" of raising the parties' children, keeping house, and feeding ranch hands, and, in addition, served as a ranch hand and bookkeeper. She testified that, in fact, she had been in charge of the "North place" since the mid-1970's.   LaVonne's contribution to the family and to the farm and ranch clearly facilitated the maintenance, appreciation, and growth of all of the marital assets, including those Robert brought into the marriage.   We conclude that the District Court did not err in its disposition of the property which Robert brought to the marriage.

4

As stated above, Robert took the position at trial that he should be awarded all of the parties' real property and pay maintenance to LaVonne. In its finding number 48, the District Court reasoned as follows in rejecting Robert's proposal:

> Payments over a period of time, particularly at the amount of $50,000.00 a year, would not be equitable, since [Robert] would have all the marital assets at his disposal and whim. [LaVonne] would have no assurance of her annual payment. [Robert] could encumber or transfer assets to [LaVonne's] detriment, and [LaVonne] would remain liable for any existing debts of the parties including debts to the Farm Credit Services and Farmers Home Administration. In the event [Robert] filed a petition in Bankruptcy Court, [LaVonne's] payment might be found to be unsecured. In the event of [Robert's] death prior to [LaVonne's] death, [LaVonne's] payments are at risk in view of the federal estate tax problems.

Under Montana's statutory scheme, maintenance would be proper only if LaVonne lacked sufficient property to provide for her reasonable needs and was unable to support herself through appropriate employment. Section 40-4-203, MCA. However, following the court's division of the marital property, it appears that LaVonne will be able to support herself through operation of the "North place." We have concluded that there is no reversible error in the District Court's decision to divide the marital property between the parties. The court's property distribution eliminates the need for maintenance.

Robert argues that the District Court had no power to distribute ranch property held by Westland Ranches, Inc. At the time of trial, stock in Westland Ranches, Inc., was owned by Robert

5

(498 shares), LaVonne (one share), and an attorney (one share). A significant portion of the parties' real property was held by Westland Ranches, Inc.

Inasmuch as it was an asset of the parties, the corporate stock was a marital asset subject to the court's distribution in the dissolution of marriage. Section 40-4-202(1), MCA; Beck v. Beck (1983), 203 Mont. 455, 460, 661 P.2d 1282, 1285. We conclude that the District Court had the power to order distribution of Robert's interest in Westland Ranches, Inc.

Although, as Robert points out, there is no order specifically transferring Robert's stock in Westland Ranches, Inc., to LaVonne, the court found that "the partition action could be effected by transferring the corporate shares to LaVonne . . . ." The findings and conclusions, while not artfully drafted, demonstrate the court's intent that Robert transfer his shares in Westland Ranches, Inc., to LaVonne as part of the property distribution.

Robert also contends that the court did not provide a rational or complete directive for dividing the marital estate. LaVonne offered extensive expert testimony concerning the workability of dividing the ranch into the "North place" and the "South place" as separate units. The court found, at its finding number 51, that

> [t]he partitioning action would be relatively simple
> since the major portion of the land allocated to LaVonne
> is owned by the corporation. The Stellflug, Fox Coulee
> and Welch lands are transferred into the corporation, in
> exchange for the Neufeld CRP lands. Additionally, the

6

machinery, equipment and vehicles are exchanged in and out of the corporation according to Table Seven of [LaVonne's expert's] Report. The historical intention was to have approximately 50 percent of the livestock in the corporation. Therefore, with a few changes, the partition action could be effected by transferring the corporate shares to LaVonne and with two exchanges, land and machinery.

The exhibits to the court's findings list the real and personal property awarded to each party.

The District Court left to the parties and their counsel the responsibility of carrying out the exchanges of title to property necessary to execute its division of marital property. In this manner, the court allowed the parties some discretion in achieving the property distribution while avoiding the tremendous tax burden Robert predicts. If this presents insurmountable problems of execution, the parties may return to the District Court for further specific orders following this appeal. We hold that it was within the power and discretion of the court to divide the marital property as it did and that no error has been shown.

II

Do the court's findings, conclusions, and decree adequately divide or assess responsibility for the parties' indebtedness?

Robert claims the court ignored allocation of the ranch indebtedness. The court found that the livestock should be divided equally after payment of the Farm Credit Services operating loan. It also referred to the proposal of LaVonne's expert, who suggested

7

that the total amount of debt be divided in like proportion to the division of total amount of property owned, or 59 percent to Robert and 41 percent to LaVonne. However, neither the court's findings, conclusions, and decree nor the proposal of LaVonne's expert specifies which debts Robert is to pay and which LaVonne is to pay.

LaVonne suggests that this Court either reform the judgment to show what was intended as to the marital debts or remand the case so that the District Court may amend the judgment to show what was intended. A court has the power to amend its own judgment to express what it originally decided or to grant the relief originally intended. In re Marriage of Cannon (1985), 215 Mont. 272, 275, 697 P.2d 901, 902-03. We remand this matter to the District Court so that it may amend its judgment to indicate which specific marital debts are Robert's responsibility and which are LaVonne's.

III

Do the court's findings, conclusions, and decree adequately address and assess responsibility for the tax consequences of its division of the ranch operation?

In his brief on appeal, Robert states that his

position at trial was that this was an appropriate case for a lifetime maintenance award so he did not feel obligated to assist the opposition in figuring the tax ramifications of their various proposals to chop up the ranching operation or invade the corporate property.

Now that the District Court has adopted LaVonne's proposal to divide the ranch, Robert complains that the court did not adequate-

8

ly consider the tax consequences of that option. The District Court was only obligated to consider the evidence presented to it. The evidence was that there would be tax consequences no matter how the court distributed the marital property. We hold that no error has been shown in the court's consideration of the tax consequences of its distribution of marital property.

Affirmed, and remanded in part for clarification.

Chief Justice

We concur:

Justices

9

March 2, 1993

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Matthew W. Knierim
Attorney at Law
P.O. Box 29
Glasgow, MT 59230

Keith Maristuen
Bosch, Kuhr, Dugdale, Martin & Kaze
P.O. Box 7152
Havre, MT 59501

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy