HAREN, Appellee,

v.

HAREN, Appellant.

[Cite as *Haren v. Haren*, 184 Ohio App.3d 722, 2009-Ohio-5652.]

Court of Appeals of Ohio,
Fifth District, Stark County.

No. 2008 CA 00201.

Decided Oct. 19, 2009.

David S. Ake, for appellee.

Rosemary G. Rubin, for appellant.

EDWARDS, Judge.

{¶ 1} Defendant-appellant, Gary Haren, appeals from the August 19, 2008 judgment entry of the Stark County Court of Common Pleas, Domestic Relations Division.

## STATEMENT OF THE FACTS AND CASE

{¶ 2} Appellant, Gary Haren, and appellee, Nancy Jo Haren, were married on September 25, 1981. Two children were born as issue of that marriage: Jeanette Haren (born April 18, 1990) and Katelyn Haren (born November 29, 1991).

{¶ 3} On October 23, 2007, appellee filed a complaint for divorce against appellant. Appellant filed an answer and counterclaim on November 1, 2007.

{¶ 4} A trial was held on June 2, 2008. At the time of the trial, the parties' oldest child was emancipated. The parties stipulated that the only disputed issues were spousal support and the allocation of the marital residence, which the parties agreed was worth $104,500 and was unencumbered by a mortgage.[1]

{¶ 5} At the trial, appellee testified that she was an X-ray technologist and earned $49,086.72 in 2007. She testified that she believed that she would earn approximately the same in 2008 as in 2007. Appellee testified that appellant had received $14,508.00 in Social Security disability benefits in 2007 and that Katelyn receives approximately $300 a month in derivative Social Security benefits. Appellee testified that appellant, who had total hip surgery in 2000, started receiving Social Security Disability in 2003.

{¶ 6} When asked what type of activities appellant had been involved in over the "past couple of years," appellee testified that appellant had remodeled the kitchen and had torn out the old cabinets, built new ones and installed them, remodeled the bathroom and totally gutted it, and built a tool shed. She further testified that appellant had put in a new cement driveway and sidewalk and that he had had to break up the old cement with a sledge hammer to do so. Appellant's brother helped him with the driveway. When asked when this occurred, appellee testified that "[t]hat was probably last August * * * probably last Fall 2007."

{¶ 7} Appellee also testified that appellant went deer hunting every year with a bow and arrow and gun hunting and that in February 2008, he had shoveled their driveway and sidewalk and had snowplowed the driveway. She also testified that he rode a bicycle around town. While appellant appeared in court with a cane,

---

1. The scope of the trial was later expanded to include the disposition of the household goods and furniture.

appellee testified that appellant did not always walk with a cane and that she had seen him a couple of days before carrying jugs of water in both hands with no cane.

{¶ 8} Testimony was adduced at trial that appellee had a pension valued at $47,000 while appellant's pension was valued at $12,049. Appellee testified that she wanted the trial court to divide the balance of those, which was $35,141, via use of a qualified domestic relations order ("QDRO"). Appellee also testified that she charged $3,000 in attorney fees on a Citi Master Card and that the card had a balance of $10,500.

{¶ 9} On cross-examination, appellee was questioned about the Citi Master Card, which was marked as Plaintiff's Exhibit 22. The following is an excerpt from her testimony on cross-examination:

{¶ 10} "Q. Um Mrs. Haren let's start with the financial statement that you filed at the time that you filed your divorce in October of 2007. Now you showed on that three credit cards. Citi Master Card $1,100.00 * * *

{¶ 11} "But the Citi Master Card you indicated at the time of the filing of the divorce was $1,100.00 with $125.00 payment?

{¶ 12} "A. Yes.

{¶ 13} "Q. That's what on your balance * * * that's what is on your financial statement that you filed?

{¶ 14} "A. That was back in October * * * is that what you're saying of 2007?

{¶ 15} "Q. I'm asking you is that what it was?

{¶ 16} "A. Yes * * * yes * * * that's when I filed it.

{¶ 17} "Q. Because that is when you filed this financial statement that we are assuming is accurate?

{¶ 18} "A. Right. Right.

{¶ 19} "Q. Okay now I am going to hand you back and I think that you already have a copy of it Mr. Ake's Exhibit Plaintiff's Exhibit 22 is that the same credit card?

{¶ 20} "A. Yes.

{¶ 21} "Q. And I don't know whether Mr. Ake was going really fast or I just wasn't paying attention but I think that he said $10,000.00. What's the new balance that is shown at the top right hand corner?

{¶ 22} "A. $7,567.00.

{¶ 23} "Q. Um * * * so it's not ten.

{¶ 24} "That's the new balance here. Since I don't have it updated I just paid him for the rest of the attorney fees which isn't showing up there right now."

{¶ 25} Appellee further testified that she charged airline tickets on the same for herself and her two daughters while the case was pending because appellee's father was sick in Florida, and she wanted to see her parents. The cost of the tickets was $848.40.

{¶ 26} Appellee also testified on cross-examination that starting in April 2008, Katelyn would receive $617.70 in derivative Social Security benefits. Jeanette's derivative benefits were stopped because of her emancipation.

{¶ 27} Jeanette Haren, the parties' oldest daughter, testified that over the last couple of years, appellant had remodeled the kitchen and bathroom, had built a shed, and had broken up the concrete on the driveway. She also testified that appellant rides a motorcycle and that appellant does not use a cane around the house or around town. Jeanette Haren further testified that she took the photographs of appellant shoveling snow and on his motorcycle that were admitted as exhibits at trial. When asked about the photograph of appellant shoveling snow, she testified that that photograph was taken right after a court hearing at which appellant had appeared with a cane. Jeanette Haren testified that in the summer of 2007, appellant had added a pitch to a flat roof.

{¶ 28} At trial, appellant testified that he has had seven surgeries on his hip since his marriage to appellee and that he had three total hip replacements. He testified that he had had surgery in 2000 and that he also had had hip surgery in December 2007 to replace his other hip because of pain and arthritis. Appellant testified that the photograph of him deer hunting that was admitted at trial was taken before his most recent surgery, and that at the time of the photograph, he was living on pain pills.

{¶ 29} Testimony was adduced that appellant has not worked since his hip replacement in 2000 and that he was declared disabled. Appellant testified that he did not receive any Social Security disability benefits until 2003, when he received a lump sum of approximately $36,000. Appellant used the money to pay off the house.

{¶ 30} Appellant testified that he did not use a cane around the house, but that he used it when doing a lot of walking. He testified that he did not shovel snow, but rather pushed it off the driveway and that, after doing so, he would get sore and take more pain medication. Appellant also testified that he rode a bicycle for therapy and that his doctor had told him to ride as much as he could even though it caused him pain.

{¶ 31} The following testimony was adduced when appellant was asked about remodeling the kitchen and other activities that appellee and their daughter testified about:

{¶ 32} "A. I've done all of that. She said that ah * * * she didn't tell you that I've been working on that kitchen for about two years. Building it in my shop. Yeah it was put in * * * in a short amount of time but I've worked on it for months and months on end. I do a little here and then when I get sore I quit. You know. It took me a couple of years to try and build that.

{¶ 33} "Q. Are you able to work a full day?

{¶ 34} "A. No.

{¶ 35} "Q. Are you able to work * * * well let me ask * * * how many hours a day could you actually do a job if you were able to get one?

{¶ 36} "A. Maybe an hour or two.

{¶ 37} "Q. And then what happens?

{¶ 38} "A. I swell up too bad.

{¶ 39} "Q. And how long has that been the case Gary?

{¶ 40} "A. I've always swelled up. But it's worse now since the last operation you know what I mean."

{¶ 41} Appellant testified that his brothers helped him break up the cement on the driveway.

{¶ 42} At the trial, appellant testified that his 401K was worth $10,984, that he was 48 years old with a 12th grade education, and that before he went on disability, he worked mostly in a shop running a machine. He testified that since receiving disability in 2003, he has performed a couple of odd jobs around the house. He testified that he could not do the same job any more because he had two artificial hips rather than one and was in pain every day. Appellant took Vicodin extra strength for his pain.

{¶ 43} Appellant also testified that he had health insurance through appellee and that he was eligible to get Medicaid at a cost of $100 a month "just for the medical." Appellant testified that he did not use any of the money in the marital account to pay for his attorney fees, which were estimated at $3,944.

{¶ 44} On cross-examination, appellant testified that he used a cane when coming to court because he used one whenever he did a lot of walking. He testified that his doctor told him to use a cane so that he would not tear his other hip and that his doctor recommended that he ride a stationary bike, which appellant does not have. Appellant also testified that he poured cement with the help of his brothers. When asked why he could not have a job sitting down and

running a press, appellant testified that he was unable to sit long and that it hurt him to sit in court.

{¶ 45} Pursuant to a judgment entry filed on June 3, 2008, the trial court directed both parties to submit proposed findings of fact and conclusions of law. Both parties did so. As memorialized in a judgment entry filed on August 20, 2008, the trial court adopted the proposed findings of fact and conclusions of law filed by appellee and ordered appellee's counsel to prepare and "submit the suitable JE to close this case."

{¶ 46} A judgment entry decree of divorce was filed on September 18, 2008. The trial court ordered that "there shall be no exchange of spousal support between the parties" and awarded the marital residence to appellee. The trial court, in the judgment entry, also ordered that "the parties' marital assets and liabilities shall be divided as per Plaintiff's Exhibit 23 attached hereto and made a part of." Exhibit 23 indicated that appellee owed appellant $41,409 as an equalization payment and that with respect to the pension benefits, $17,570 was to be paid by QDRO to appellant.

{¶ 47} Appellant now raises the following assignments of error on appeal:

{¶ 48} "I. The court abused its discretion in failing to equitably divide the marital property including the marital home, pensions, and personal property.

{¶ 49} "II. The court abused its discretion in failing to allocate the marital debts including, but not limited to, the attorney fees.

{¶ 50} "III. The court failed to consider all of the statutory factors contained in Ohio Revised Code Section 3105.18 and abused its discretion in failing to award the defendant/appellant spousal support.

{¶ 51} "IV. The court abused its discretion in denying the defendant/appellant spousal support based on his gender."

I

{¶ 52} Appellant, in his first assignment of error, argues that the trial court abused its discretion in failing to equitably divide the marital property. Appellant specifically asserts that the trial court, in dividing the assets, did not specify how the transfer of assets was to be accomplished.[2]

{¶ 53} In the case sub judice, the trial court in the decree awarded appellee the marital residence. The trial court, in order to equalize the property division,

---

2. We note that at the direction of the trial court, the findings of fact and conclusions of law in this case were prepared by counsel for each party. The trial court adopted those prepared by appellee's counsel without modification and ordered appellee's counsel to prepare and submit the final judgment entry.

indicated that appellee owed appellant $41,409. However, the trial court in its entry did not actually order appellee to pay such amount to appellant. Moreover, there is no guidance in the trial court's entry as to when this equalization payment is to be made.

{¶ 54} The trial court also awarded each party his or her own pension benefits and stated in Exhibit 23, which was adopted by the trial court: "$17,570.00 to be paid by QDRO to Husband." Once again, there is no actual order directing appellee to pay such amount to appellant. Furthermore, the trial court did not indicate how the QDRO was to be prepared, who was to prepare the same, and at whose cost.

{¶ 55} Furthermore, while the trial court awarded appellant specified personal property, as noted by appellant, "[i]t is * * * unclear how [appellant] is to obtain any of his personal property."

{¶ 56} Based on the foregoing, appellant's first assignment of error is, therefore, sustained.

## II

{¶ 57} Appellant, in his second assignment of error, argues that the trial court erred in failing to allocate marital debts. Appellant specifically maintains that the trial court failed to allocate any debt to appellant even though he had a debt of $2,000 and had incurred attorney fees in the amount of $3,500. Appellant also argues that the trial court erred in allocating marital debt in the amount of $10,500 to appellee when "[i]t is uncontroverted that the Plaintiff/Appellee's debt was increased during the pendency of the divorce, not only by the payment of her attorney fees in the amount of $5,000.00, but for a trip which she and her children took and charged on her credit card." In essence, appellant argues that the trial court erred in ordering appellant's debts to be paid by appellant while, at the same time, finding appellee's debts to be marital debts. Appellant notes that on Plaintiff's Exhibit 23, the only liability listed is a $10,500 MasterCard liability that is listed under appellee's name.

{¶ 58} A review of a trial court's division of marital property is governed by the abuse-of-discretion standard. *Martin v. Martin* (1985), 18 Ohio St.3d 292, 18 OBR 342, 480 N.E.2d 1112. We cannot substitute our judgment for that of the trial court unless, when considering the totality of the circumstances, the trial court abused its discretion. See *Middendorf v. Middendorf* (1998), 82 Ohio St.3d 397, 696 N.E.2d 575. To find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.

{¶ 59} Appellant initially argues that the trial court erred in allocating to appellee $10,500 as marital debt. This figure represents the balance on appel-

lee's Citi MasterCard. The financial statement that appellee filed in October 2007, at the time the divorce was filed, indicated that the card had a balance of $1,100. Plaintiff's Exhibit 22, which was admitted at trial, showed that the card had a balance of $7,567.20 as of the statement closing date of March 18, 2008. At the trial on June 2, 2008, appellee testified that she had recently charged $3,000 in attorney fees on the card so that the balance was approximately $10,500.

{¶ 60} We concur with appellant that by adopting Plaintiff's Exhibit 23, which listed the MasterCard as a marital liability under appellee's name, the trial court "ostensively [sic] forced [appellant] to pay half of [appellee's] attorney fees" and that such a result is inequitable. Even assuming arguendo that the parties had the same earning capabilities, it is inequitable and an abuse of discretion to order appellant to pay half of appellee's attorney fees as well as his own.

{¶ 61} As is stated above, appellant also argues that the trial court "failed to find that [appellant] also had a debt in the amount of approximately $2,000.00 which was either inadvertently or deliberately left off the chart [Exhibit 23] prepared by the Plaintiff/Appellee's attorney and attached to * * * the final decree." We note that appellant, in Defendant's Exhibits F (Affidavit: Financial Statement) and G (Division of Property Chart), listed Visa debt of approximately $1,000.

{¶ 62} Pursuant to R.C. 3105.171(B), the trial court was required to "divide the marital and separate property equitably." When making a division of marital property, the trial court was required to consider both the assets and liabilities of the spouses. R.C. 3105.171(F)(2). We note that appellee, in her brief, contends that "[m]arital debt * * * [was] not one of the disputed issues that counsel stipulated to for trial." However, the trial court adopted appellee's Exhibit 23, which allocated assets and liabilities, and there were testimony and exhibits regarding debt. Thus, the trial court went beyond addressing only the stipulated issues of spousal support and allocation of the marital residence.

{¶ 63} We hold that the trial court erred in not considering all the credit card debt of the parties, in not determining whether the debts were martial or separate, and in not making orders concerning the division of all the debt. The trial court also erred in making orders that resulted in appellant's being made responsible for part of appellee's attorney fees and all of his own.

{¶ 64} Appellant's second assignment of error is therefore sustained.

### III, IV

{¶ 65} Appellant, in his third and fourth assignments of error, argues that the trial court abused its discretion in failing to award spousal support to him. We agree.

{¶ 66} A review of a trial court's decision relative to spousal support is governed by an abuse-of-discretion standard. *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 20 O.O.3d 318, 421 N.E.2d 1293. We cannot substitute our judgment for that of the trial court unless, when considering the totality of the circumstances, the trial court abused its discretion. *Holcomb v. Holcomb* (1989), 44 Ohio St.3d 128, 541 N.E.2d 597. To find an abuse of that discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.

{¶ 67} R.C. 3105.18(C)(1)(a) through (n) sets forth the factors that a trial court must consider in determining whether spousal support is appropriate and reasonable and in determining the nature, amount, terms of payment, and duration of spousal support. These factors are:

{¶ 68} "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

{¶ 69} "(b) The relative earning abilities of the parties;

{¶ 70} "(c) The ages and the physical, mental, and emotional conditions of the parties;

{¶ 71} "(d) The retirement benefits of the parties;

{¶ 72} "(e) The duration of the marriage;

{¶ 73} "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

{¶ 74} "(g) The standard of living of the parties established during the marriage;

{¶ 75} "(h) The relative extent of education of the parties;

{¶ 76} "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

{¶ 77} "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

{¶ 78} "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

{¶ 79} "(l) The tax consequences, for each party, of an award of spousal support;

{¶ 80} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

{¶ 81} "(n) Any other factor that the court expressly finds to be relevant and equitable."

{¶ 82} As is stated above, the trial court, in its August 20, 2008 judgment entry, adopted appellee's proposed findings of fact and conclusions of law as the court's own. With respect to spousal support, the proposed findings of fact and conclusions of law stated as follows:

{¶ 83} "1. Although the Defendant [receives] income from disability payment, it is undisputed that the Defendant in recent months has performed tasks and recreational activities that require strenuous physical ability.

{¶ 84} "2. In addition, the Defendant [is] capable of earning additional income without losing his disability benefits and has chosen not to."

{¶ 85} We find that the trial court abused its discretion in failing to award spousal support to appellant. The parties in this case were married for over 25 years. At the trial in this matter, testimony was adduced that appellant was 48 years old with a 12th grade education and that, prior to 2000, appellant had worked as a machine operator. Appellant had not worked since having a hip replacement in 2000 and has been receiving disability since 2003. Appellant received $14,508 in Social Security Disability benefits in 2007. Appellant testified that he had had seven operations on his hip since his marriage to appellee and that the last operation was in December 2007, when he had his other hip replaced because of pain and arthritis. Appellant has had a total hip replacement three times.

{¶ 86} While there was testimony that appellant worked on the roof, appellant testified that he took six months to do the work because he was able to do only a little work at a time. He further testified that when he worked on the roof, he had had only one artificial hip as opposed to two. Appellant testified that he was in pain every day and that he took Vicodin extra strength. He further testified that while he did push snow off the driveway last winter, he had to take pain medication after doing so.

{¶ 87} Appellant also testified that he took years to work on the kitchen due to pain, that he was able to work only an hour or two a day, and that he had only one artificial hip when he bagged the deer, while as of the time of trial, he had two. Appellant, when questioned about his ability to work, testified that he was able to work an hour or two a day at most due to pain.

{¶ 88} Testimony also was adduced at trial that appellee earned $49,086.72 in 2007 as an X-ray technologist and had health insurance. After his divorce from appellee, appellant would not have health insurance.

{¶ 89} Based on the foregoing, we find that the trial court's decision not to award spousal support to appellant was arbitrary, unconscionable, and unreasonable. However, while appellant argues in this fourth assignment of error that the trial court's decision was based on his gender, we find no evidence in the record that the trial court determined that spousal support was not necessary because appellant is a male. The trial court made findings that appellant was able to work, and that finding appears to be the basis for the trial court's decision. And while we do not dispute that the uncontroverted evidence indicates that the appellant can do many physical tasks, the abnormal number of his hip surgeries is uncontroverted also.

{¶ 90} Appellant's third assignment of error is, therefore, sustained, while his fourth assignment of error is overruled.

Judgment reversed
and cause remanded.

HOFFMAN, P.J., and FARMER, J., concur.

