FILED

01/09/2018

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 17-0064

DA 17-0064

IN THE SUPREME COURT OF THE STATE OF MONTANA

2018 MT 6N

IN RE THE MARRIAGE OF:

JESSICA MAY LOW,

        Petitioner and Appellee,

   And

SCOOBY NELS LOW,

        Respondent and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DR-10-817(D)
Honorable David M. Ortley, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           George B. Best, Julia D. Nordlinger, Best & Westover Law Office,
Kalispell, Montana

       For Appellee:

           Peter F. Carroll, Attorney at Law, Kalispell, Montana

Submitted on Briefs:  December 20, 2017

Decided:  January 9, 2018

Filed:

                                  Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Scooby Low appeals the Eleventh Judicial District Court's final decree of dissolution, challenging the court's determination of temporary support, its calculation of arrearages, and its valuation and distribution of marital assets and debts. We affirm in part, reverse in part, and remand for entry of an amended decree.

¶3 Jessica and Scooby Low were married on December 31, 1998. Jessica filed a Petition for Dissolution in the Eleventh Judicial District Court on December 17, 2010. The District Court entered an Interim Family Support Order in January 2012 that required Scooby to pay Jessica $1,842 each month for family expenses, as well as the parties' $1,461.44 monthly mortgage payment. The court denied Scooby's motion to amend the Interim Support Order in April 2012. It found that both parties had suffered developments that reduced their available resources—Scooby lost his lucrative seasonal employment and Jessica sustained an injury during the Christmas holidays. The court found that "[t]he circumstances which existed before the parties separated no longer exist and it is essential that each party take steps to preserve the marital estate and provide for the best interest of their children." It concluded, however, that Scooby's change in income resulted from his own choices and that the changes in circumstances were not "so substantial and continuing

2

that the existing interim order is unconscionable." The court ordered the sale of certain items of personal property to be applied to mortgage payments and joint credit card debt.

¶4 The District Court held a two-day bench trial in August 2012. The parties filed their proposed findings of fact and conclusions of law in October and then waited another four years for the decree. Because of its delay, the District Court had to entertain numerous interim motions; it entered orders long after trial allowing sale of the marital home and sale of the parties' boat and boat trailer, as well as an order requiring Scooby to transfer the 2012 tax refund to Jessica to be applied toward the mortgage debt. In November 2013, the court held another hearing and ordered that Jessica receive $24,000 from the sale of the marital home; it directed that the remaining proceeds be issued to Scooby's counsel, "subject to adjustment in the final distribution of the marital estate."

¶5 More than three years after trial, the court held a status conference and required the parties to submit updated information on their income and employment. The parties complied. The District Court entered an order dissolving the marriage on December 29, 2015. The order included partial findings of fact and conclusions of law, noting the court's inability to "simply adopt" the parties' proposals following trial because of the nature of the evidence, the financial issues, and the acrimony and angst that interfered with the orderly presentation of evidence. The court stated that it had "not yet reached a final determination as to how the marital estate should be divided and/or distributed," but left in place the August 2011 Interim Family Support Order.

¶6 Another year passed.

¶7     On January 3, 2017, the District Court entered its final decree. The court found, based on all the evidence considered, that because of the substantial change in Scooby's earning capacity, as of February 2013 the Interim Support Order was not sustainable. It retroactively designated $600 of the monthly family support obligation to child support, with the remaining $1,242 allocated to temporary maintenance. The court further determined that by October 2013, when Jessica became employed and the marital home was sold, Jessica had sufficient property to provide for her reasonable needs and the ability to be self-supporting. The net proceeds of the sale of the home, $26,481.59, had been distributed to Jessica, with Scooby to be given credit in that amount against his family support arrearage. After applying that credit, the court determined that Scooby's family support arrearage in October 2013 was $10,128.62. Adding in his child support arrearage from the same date ($600 per month, less the $2,850 he had paid), left Scooby with a total arrearage of $30,078.62.

¶8     The court held that each party should retain whatever personal property he or she currently possessed, and it adopted the values that each party attributed to the other's personal property in determining how to allocate the total. The final decree acknowledged that numerous items of property had been sold with the court's permission during the pendency of the proceedings, and the proceeds had been applied to meet household needs and to service marital debt. Finding that Scooby retained more value than did Jessica in the personal property distributed to each party, the court decreed that Jessica is entitled to equalize the disparity.

¶9 The court determined that Jessica was entitled to the following payments:

- $13,240.79 for half the sale proceeds of the marital home, reasoning that the proceeds Jessica had received were used only to reduce Scooby's support arrearage;

- $12,011.50 as an equalization payment for the personal property distribution;

- $6,146.04 for Scooby's missed mortgage payments;

- $8,271.00 for Jessica's half of the parties' 2010 and 2011 tax refunds; and

- $26,006.62 for Scooby's child and family support arrearage, after applying the payments and credits enumerated in the court's findings.

Because "there is no liquid asset from which Scooby could timely make any equalization payment," the court entered a money judgment in Jessica's favor in the total amount of $65,675.95.

¶10 Section 40-4-202(1), MCA, requires a district court to "equitably apportion" a marital estate upon dissolution. Though not without limits, a district court has broad discretion in apportioning the estate. *In re Marriage of Clark*, 2015 MT 263, ¶ 12, 381 Mont. 50, 357 P.3d 314. "A district court abuses its discretion when it apportions more property to a party than is found in the marital estate." *Clark*, ¶ 12 (citing *In re Marriage of Dennison*, 2006 MT 56, ¶ 22, 331 Mont. 315, 132 P.3d 535). As we noted in *Clark*, "It is not error per se to make an award greater than the payor's liquid assets, if the payor can sell or refinance property to meet the obligation," or if the court enters "a monetary award deferred over sufficient time for liquid funds to be accumulated without sale." *Clark*, ¶ 12 (quoting *In re Marriage of Schwartz*, 2013 MT 145, ¶ 34, 370 Mont. 294, 308 P.3d 949). Although "[t]he time for proper valuation cannot be tied to any single event in the

dissolution process," we have stressed that it is preferable for property valuation to "occur at the time of distribution" and that "present fair market values should be used." *In re Marriage of Krause*, 200 Mont. 368, 378-79, 654 P.2d 963, 968 (1982); *accord In re Marriage of Bartsch*, 2004 MT 99, ¶¶ 24-27, 321 Mont. 28, 88 P.3d 1263; *In re Marriage of Pospisil*, 2000 MT 132, ¶¶ 43-52, 299 Mont. 527, 1 P.3d 364.

¶11   There can be no doubt that the marital estate was well-depleted by the time the District Court finally issued its decree in this case. This Court is chagrined by the hardships both parties had to endure by having their lives held in limbo during the time it took to get this matter resolved. To be sure, the court record shows that the parties did not make the District Court's job easier. And the court attempted to ameliorate the effects of the delay by getting updated information on which to base its final decree. Remanding for additional evidence and calculations would only add insult to injury. Upon review of the record, we conclude that the District Court did not abuse its discretion in large part when entering its final decree.

¶12   First, although the court applied the wrong legal standard in considering Scooby's request to amend the Interim Support Order, it considered evidence of the family's circumstances and the choices Scooby had made concerning his employment, and it took measures to convert assets into cash to service marital debt. Based on the record before the court at the time, its denial of the motion to amend was not an abuse of discretion. The final decree recognized that Scooby's earning ability had changed substantially, and the court modified his obligation retroactively to account for both parties' financial developments. The court's calculation of the arrearage did not adopt either Jessica's or

6

Scooby's desired outcome, and its findings took into account the application of amounts Scooby had paid and property sales proceeds applied to service the debt. Scooby takes issue with the court's reliance on Jessica's November 2016 status report. But Scooby had the opportunity to respond to that report before the District Court entered its final decree; he did so by asking for another hearing, but he did not expressly contest the amount Jessica represented he had paid for support.

¶13 We agree with Scooby, however, that the court lacked a basis to credit Jessica for his missed mortgage payments when the court recognized that Scooby could not meet those obligations at that time and had ordered property to be sold to apply toward the debt. We find similar problems with the judgment for the tax refunds, which long had been exhausted to meet expenses before the final decree was issued.

¶14 Scooby further contends that the court's decision to award Jessica half the home sale proceeds was error because Jessica already had received all the proceeds. He argues that it was improper to treat the entire amount as though it were distributed to Scooby and award Jessica half. But the court already gave Scooby credit for the home sale proceeds when it reduced his arrearage by the entire amount. The proceeds were distributed in partial satisfaction of unpaid family support, not as a distribution of marital equity. Having determined that the District Court did not abuse its discretion in its retroactive adjustment of the family support order, we conclude that its distribution of the home sale proceeds did not amount to an abuse of discretion.

¶15 Scooby argues that the equalization payment for personal property must be reversed because the District Court gave no rationale for its decision to use each party's valuation

of the other's property. But the District Court had discretion "to adopt any reasonable valuation of marital property that is supported by the evidence." *Schwartz v. Harris*, 2013 MT 145, ¶ 23, 370 Mont. 294, 308 P.3d 949 (citing *In re Marriage of Hedges*, 2002 MT 204, ¶ 21, 311 Mont. 230, 53 P.3d 1273). The parties divided their personal property long before the court entered its final decree. Jessica maintained that Scooby had retained marital property worth $68,000 more than the property in her possession. The court based its distribution and valuation on exhibits prepared by each party and deducted for items that had been sold since trial. Its findings are supported by the evidence, and the court did not abuse its discretion. We conclude that Scooby's additional arguments do not establish reversible error.

¶16     At the end of the day, the fact that there was no cash in the remaining marital estate with which to equalize the division of property does not mean that the District Court had to declare a wash. A district court has an obligation to equitably apportion the parties' assets and debts; the court properly required an equity payment for the property it awarded to Scooby, even if he could not pay it immediately. Excepting the tax refunds and the missed mortgage payments, we conclude that the decree meets the requirements of the law.

¶17     We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. Having reviewed the briefs and the record on appeal, we conclude that the District Court's delay constituted an abuse of discretion. Its final decree, however, equitably divided the parties' assets and debts with two exceptions. We affirm

in part, reverse in part, and remand for entry of an amended Decree striking the requirements that Scooby pay Jessica $6,146.04 for missed mortgage payments and $8,271.00 for Jessica's half of the parties' 2010 and 2011 tax refunds and reducing the money judgment in Jessica's favor in like amount.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE

9